In the Matter of Joanne
KOLODRUBETZ.

COUNTY OF HENNEPIN, Appellant,

v.

Joanne KOLODRUBETZ, Respondent.

No. C4–83–680.

Supreme Court of Minnesota.

Feb. 3, 1984.

Thomas L. Johnson, Hennepin County Atty., Peter John Fransway, Asst. County Atty. by Larae L. Bradley, Staff Atty., Minneapolis, for appellant.

Thomas B. Wilson, III, and Gayle Gaumer, Edina, for respondent.

Susan L. Lentz, Legal Aid Soc., Minneapolis, amicus curiae Minn. Mental Health Ass'n.

YETKA, Justice.

This case is before the court on the certification of an issue as important and doubtful by the Mental Health Division of the Hennepin County District Court. Hennepin County brought a petition seeking the involuntary commitment of respondent Joanne Kolodrubetz on the ground that she is mentally ill as defined by Minn.Stat. § 253B.02, subd. 13. Ms. Kolodrubetz moved for dismissal of the petition for lack of jurisdiction on the basis that her mental illness does not pose a substantial likelihood of physical harm to herself as required by the statute for commitment. The district court has retained this motion under advisement pending certification to this court of the following question: "Can an American citizen, who is mentally ill but because of recent treatment is presently at no risk of physical harm, be denied liberty, in whole or in part, in order to compel continuation of the treatment? If so, for how long can liberty be denied and what sanctions can be imposed for disobedience of a court order to continue the treatment?"

There is no transcript of the commitment hearing in this case, but there is a Stipulation of Facts and Testimony by the parties, which is attached hereto and made a part of this opinion as Appendix I. The parties apparently either earlier or simultaneously entered into a stipulation of fact and evidence, less detailed, but agreeing that the question to be certified was "Whether Respondent's psychiatric disorder currently poses a substantial likelihood of harm to herself within the meaning of Minn.Stat. 253B et al (1982) because she may cease undergoing voluntary treatment when given on an out-patient basis." The Stipulation of Fact and Evidence is also attached hereto and made a part of this opinion as Appendix II.

■ The certified question is not properly presented to this court. Minn.R.Civ.P. 103.03(i) permits review of such questions only on appeal from an order denying a motion for summary judgment or a motion to dismiss for failure to state a claim upon which relief can be granted. Since the trial court has not yet ruled on appellant's motion to dismiss, we decline to render an opinion.

■ Even if we were inclined to entertain the request, we would be unable to

answer the certified and stipulated questions. The trial court is asking us whether this patient can be committed. She can, provided that the conditions of the Minnesota Commitment Act are satisfied. In this case, the trial court made no finding of mental illness by clear and convincing evidence, no finding that appellant poses a substantial likelihood of physical harm to herself or others, and no finding that there is no suitable alternative to commitment. These findings are required by Minn.Stat. § 253B.09, subd. 1 and § 253B.02, subd. 13 (1982). The absence of factual findings puts this case in a posture where there is nothing for us to review. Fact-finding in the first instance is not a function a reviewing court is designed to address. Consequently, it would be improper for us to express an opinion on whether appellant should be committed before the trial court makes the necessary findings of fact.

We, therefore, remand the case to the district court with instructions that it make specific findings on the following questions after it feels it has sufficient evidence to do so:

1. Whether anorexia nervosa is a verifiable mental illness under our statutes;

2. Whether the patient here is mentally ill under Minn.Stat. § 253B.02, subd. 13 (1982). While it appears that the parties may have stipulated to the fact that she is mentally ill, this is a matter for the court to decide.

3. If the patient is found mentally ill, whether there are suitable alternatives to the proposed commitment plan;

4. If there is found to be an alternative to actual commitment, the court should dictate such alternative treatment methods pursuant to Minn.Stat. § 253B.09, subd. 1 (1982).

Only when these questions have been duly and adequately answered by the trial court is an appeal to this court in the proper posture for disposition.

Remanded.

## STIPULATION OF FACTS AND TESTIMONY

1. Respondent suffers from anorexia nervosa which is a major mental illness and a verifiable psychiatric disorder of perception as defined in *Diagnostic and Statistical Manual III*. This order grossly impairs her judgment by instances of faulty perception regarding her physical appearance.

2. A petition for involuntary commitment of Respondent was filed in the above-named Court on January 27, 1983.

3. At that time, Respondent was not in a life-threatening situation, had voluntarily admitted herself for treatment to the University of Minnesota Hospital facilities and had consented to remain until she reached the weight goal set forth by the hospital's attending staff.

4. A Pre-Petition Screening Panel supported the January 27, 1983 Petition for Involuntary Commitment of Respondent.

5. The first examination, conducted February 1, 1983 pursuant to the January 27, 1983 Petition, did not support involuntary commitment finding that Respondent was not then presently dangerous to herself or others.

6. The January 27, 1983 Petition was dismissed without specific findings after a trial on the merits.

7. Respondent failed to follow through with outpatient treatment when discharged from the University of Minnesota Hospital facilities in February of 1983.

8. On March 29, 1983, Respondent again voluntarily admitted herself to the University of Minnesota Hospital facilities for treatment of her anorexic condition.

9. At the time of Respondent's voluntary admission to the University of Minnesota Hospital on March 29, 1983, she was not in a life-threatening situation.

10. Since March 29, 1983, Respondent has consented to treatment at the University of Minnesota Hospital facilities until she reached the weight goals set by the Univer-

sity of Minnesota Hospital's attending staff.

11. A Pre-Petition Screening Report does not support involuntary treatment or commitment, but rather recommends continued voluntary treatment at the University of Minnesota Hospital facilities followed by outpatient treatment.

12. Respondent has never been involuntarily committed for treatment of her mental illness.

13. Respondent verbalizes that she is aware of the physical and emotional consequences of failure to comply with and continue with treatment.

14. Respondent has a history of at least fourteen (14) hospitalizations for treatment of anorexia nervosa made necessary because of her failure to comply with outpatient treatment programs arranged during prior hospitalizations.

15. Of the fourteen (14) admissions to the University of Minnesota Hospital, Respondent's physical condition due to self starvation has been life-threatening in the majority of these admissions. Her weight has decreased to a low of 48 pounds.

16. According to medical testimony, Respondent's self starvation has resulted in evidence of organ damage; furthermore, the potential for serious injury or death increases with each new period of self-starvation.

17. Respondent's history discloses that she relapses into periods of self starvation within 4–6 weeks after discharge from inpatient treatment.

18. Doctors testified that within reasonable medical certainty, rehospitalization of Respondent will be required because of Respondent's noncompliance with the outpatient treatment plan.

19. At the present time, Respondent is not in a life-threatening situation and is in the University of Minnesota Hospital on a voluntary basis. Her weight is up to approximately 90 pounds.

20. It is the position of the Hospital that they cannot safely release Respondent without the protection of an enforceable provisional discharge in order to assure that she complies with the treatment program on an outpatient basis.

21. Anorexia nervosa is a treatable disorder and Respondent responds quickly and favorably to treatment.

22. In Respondent's case, long term inpatient treatment is not required or desired; however, hospital staff assert that outpatient care and compliance is paramount.

23. The outpatient plan recommended by the treating physician would be:

(a) Respondent will see Leah Labeck for individual therapy once a week (Monday or Friday) and for group therapy once a week (Wednesday evening).

(b) Respondent will maintain her weight in the range of 87–93 pounds, checked at weekly weigh-ins under standard conditions during clinic visits.

(c) If Respondent is out of her weight range, she must return to clinic for re-weighing in half a week (i.e., Friday or Monday). She must be in her weight range at that time or she will be considered non-compliant.

(d) If Respondent is below weight range twice in a row (i.e., for one week), she will begin eating supervised meals by the following schedule:

Respondent will eat *three* meals a day at the Hospital for *one* week. If she has maintained her weight by the end of that period, she can then eat *two* meals a day at the Hospital for *two* weeks. If she has successfully maintained her weight by the end of that period, she can then eat *one* meal (lunch or supper) a day at the Hospital for the next *three* weeks. If she is still maintaining her weight at the end of that period she can then work out her own plan with Leah Labeck or at [sic] on her own.

(e) Respondent will take medications as prescribed for medication follow-up as needed and for laboratory work as indicated.

24. The treating physician feels that no lesser restrictive alternative than described in point 23 above is available in Respondent's case.

25. Respondent's immediate family resides out of state, however, they are interested in her treatment and are willing to participate as they are able.

## STIPULATION OF FACT AND EVIDENCE

STIPULATION OF FACTS AND EVIDENCE AS TO THE MATTER OF JOANNE KOLODRUBETZ. It is agreed by and between the parties' counsel to this matter, Peter Fransway and Thomas Bennett Wilson III, that the following facts and evidence are stipulated to between them in the matter of Joanne Kolodrubetz.

1. The Respondent suffers from a verifiable psychiatric disorder of perception, anorexia nervosa, defined in Diagnostic and Statistical Manual III, which disorder grossly impairs her judgment by instances of faulty perception regarding her physical appearance.

2. That Respondent, on March 29, 1983, voluntarily admitted herself to the University of Minnesota Hospital facilities for treatment of her anorexic condition.

3. That Respondent, since March 29, 1983, has voluntarily consented to remain at the U of M Hospital facilities until she reaches the weight goals set by the University of Minnesota Hospitals attending staff.

4. That at the time of Respondent's voluntary admission to the University of Minnesota Hospital on March 29, 1983, she was not in a life threatening situation.

5. That the Pre Petition Screening Report does not support involuntary treatment or commitment but rather recommends continued voluntary treatment at the University of Minnesota Hospital facilities followed by out-patient treatment.

6. That the First Examination, conducted Friday, April 22, 1983, does not support involuntary commitment in that the examiner found that Respondent was not presently dangerous to herself or others.

7. That Respondent has voluntarily consented to continue out-patient care at the University of Minnesota Hospital facilities after her release from that facility, and that Respondent knows and is fully aware of the physical and emotional consequences of failure to comply with and continue with such out-patient treatment.

8. That a petition for involuntary commitment of Respondent was previously filed in the above-named court January 27, 1983.

9. That at the time of her previous hospitalization Respondent voluntarily admitted herself for treatment to the University of Minnesota Hospital facilities.

10. That at the time of her previous hospitalization Respondent voluntarily consented to remain at the University of Minnesota Hospital facilities until she reached the weight goals set forth by the University of Minnesota Hospital attending staff.

11. That at the time of Respondent's previous admission she was not in a life threatening situation.

12. That Pre Petition Screening Panel supported the January 27, 1983 petition for involuntary commitment of Respondent.

13. That the First Examination, conducted February 1, 1983 pursuant to the January 27, 1983 petition, did not support involuntary commitment finding that Respondent was not then presently dangerous to herself or others.

14. That the January 27, 1983 petition was dismissed without specific findings after a trial on the merits.

15. That Respondent failed to follow through with outpatient treatment when previously discharged from the University of Minnesota Hospital facilities February of 1983.

## STIPULATED EVIDENCE

### I

All court records concerning the January 27, 1983 and April 15, 1983 petitions for involuntary commitment of the Respon-

dent, including Pre Petition Screening Reports and Examiners Reports.

### II

All medical records relating to the above enumerated petitions.

STIPULATED ISSUE TO BE DETERMINED BY THE SUPREME COURT

Whether Respondent's psychiatric disorder currently poses a substantial likelihood of harm to herself within the meaning of Minn.Stat. 253B et al (1982) because she may cease undergoing voluntary treatment when given on an out-patient basis.

Dated: May 6, 1983.