**In re Lawrence D. MOLL, Alleged Mentally Ill, Appellant.**

**No. C9–83–1565.**

Court of Appeals of Minnesota.

April 10, 1984.

Oliver W. Oddan, Stillwater, for appellant.

Margaret Westin Perry, Asst. Wash. County Atty., Stillwater, for respondent.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ., concur.

## OPINION

LANSING, Judge.

The petitioner is a prisoner at the Minnesota Correctional Facility at Oak Park Heights. After voluntarily admitting himself to the Mental Health Unit (MHU), petitioner was committed to the MHU for up to six months, pursuant to the Minnesota Commitment Act of 1982, Minn.Stat. § 253B et seq. Petitioner now appeals, challenging the sufficiency of the evidence supporting the finding that he was mentally ill and challenging the trial court's finding that there were no reasonable alternatives to commitment.

We affirm, but vacate the trial court's order authorizing the injection of medication.

## FACTS

Lawrence Moll is a 36-year-old man who has been in and out of mental hospitals since 1971. While serving time for two counts of criminal sexual conduct in the second degree, Moll voluntarily admitted himself to the MHU on August 29, 1983. He was placed on confinement status after verbally threatening others, making physically threatening stances, refusing to return to his room, pounding the washing machine and dryer, threatening to stick a ball point pen through a staff person's head, yelling and banging when outside his room, spreading feces and bedding around his room, and remaining naked both inside and outside his room.

Frank W. Wood, warden of the Oak Park Heights prison, filed a petition for judicial commitment to the MHU on September 6, 1983. Commitment of prisoners to the MHU is done in accordance with Minn.Stat. § 253B et seq. "A person confined in a state correctional institution for adults who has been adjudicated to be mentally ill and in need of treatment may be committed to the commissioner of corrections and placed in the psychiatric unit established in subdivision 1." Minn.Stat. § 241.69, subd. 4 (1982).

Following the appropriate procedures, a preliminary hearing was held and an order finding probable cause to commit Moll was entered September 9, 1983. A week later, the commitment hearing was held. Moll's attorney called no witnesses on his behalf, but he did cross-examine the County's wit-

nesses and submit a statement which Moll had written.

On September 22, 1983, the trial court issued its order committing Moll to the MHU for up to six months and authorizing the administration of psychiatric medications as treatment. The court based its order on the clinical and medical records and on the testimony at the hearing. The testimony of Dr. James Pullen, court-appointed psychiatrist, was crucial. Dr. Pullen examined Moll on September 12, 1983, for about one hour. Dr. Pullen was of the opinion that Moll was mentally ill and in need of treatment. Dr. Pullen testified that Moll suffered from schizophrenia with a possible personality disorder. According to Dr. Pullen, Moll had rapid speech, frequent topic changes, an affect which was silly or overly cheerful or euphoric, mood disturbances, and difficulties in thinking. Moll's greatest danger to himself, according to Dr. Pullen, was his provocative behavior which could cause other inmates to attack him. Dr. Pullen further testified that medication was appropriate as a method of treating Moll's problems.

The records indicated that Moll talked in nonsense sentences such as, "You got ones, you got twos, you got boys." He spoke in rhymes and played a game with the periodic table in which he attempted to quiz the examiner on the meaning of various chemical symbols. He once had difficulty walking to the door and made reference to his dry bones and Ezekiel or Zachariah and the valley of dry bones. Another time he spoke to the ceiling and called it Jehovah and then did a dance called a "death dance." Moll had also made animal and groaning sounds and talked about imaginary dogs in cells. He expressed concern that he would explode when drinking water. Moll had also stood on his bed at military attention while nude and masturbated in front of others. His room was covered with pieces of rotting food, urine and feces.

### ISSUES

1. Did the trial court clearly err in finding Moll mentally ill?

2. Did the trial court clearly err in finding no reasonable alternatives to commitment?

### ANALYSIS

#### I

■ Moll challenges the trial court's finding that he is mentally ill. Upon review, we are to determine from an examination of the record if the evidence as a whole sustains the findings. Those findings will only be upset if clearly erroneous. *Johnson v. Noot,* 323 N.W.2d 724, 728 (Minn.1982).

Minn.Stat. § 253B.02, subd. 13 (1983), defines a mentally ill person as:

> any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which (a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and (b) poses a substantial likelihood of physical harm to himself or others as demonstrated by (i) a recent attempt or threat to physically harm himself or others, or (ii) a failure to provide necessary food, clothing, shelter or medical care for himself, as a result of the impairment. This impairment excludes (a) epilepsy, (b) mental retardation, (c) brief periods of intoxication caused by alcohol or drugs, or (d) dependence upon or addiction to any alcohol or drugs.

Moll raises two points on the issue of whether he is mentally ill. First, he questions the validity of Dr. Pullen's testimony. According to Moll, Dr. Pullen mistakenly relied on a statement by Moll that he needed to keep the toilet clean to have access to water. Moll argues that this episode was not a delusion because his water had in fact been turned off. The record clearly shows that Dr. Pullen did not primarily rely on this episode for his diagnosis. Further, contrary to Moll's assertion, an examiner's

opinion, based on an examination of the patient's history and a one-hour interview, is not per se unreliable under *Johnson.*

Moll's second argument is that even if Dr. Pullen's testimony was reliable, Dr. Pullen never testified that Moll's psychiatric disorder was "substantial" or that it "grossly" impaired Moll's judgment, behavior, capacity to recognize reality, or to reason or understand, under the statutory definition of mentally ill. We are unpersuaded by this argument.

██ "The use of the terms 'substantial' and 'gross' is significant." Janus & Wolfson, *The Minnesota Commitment Act of 1982: Summary and Analysis,* 6 Hamline L.Rev. 41, 45–46 (1983). These terms are traditional legal standards rather than medical terms of art. Under the commitment statute, it is the trial court, not a medical expert, that must determine whether a person is mentally ill. Minn.Stat. § 253B.09, subd. 1; *In the Matter of Kolodrubetz,* 343 N.W.2d 650, 652 (Minn.1984). Clearly this determination requires the assistance of expert medical knowledge. *Powell v. State of Florida,* 579 F.2d 324, 332 (5th Cir.1978). Consequently, the determination of mental illness is a mixed question of legal and medical judgment. *See In the Interest of Kupperion,* 331 N.W.2d 22, 27–28 (N.D.1983). Therefore, even though Dr. Pullen did not use the terms "substantial" and "grossly" in his testimony, it was proper for the trial court to reach that determination based on the evidence of Moll's psychiatric disorder and impairment.

## II

Moll also challenges the trial court's finding that there were no reasonable alternatives to commitment. Minn.Stat. § 253B.09, subd. 1, requires the trial court to consider reasonable alternatives such as the following: dismissal of the petition, voluntary outpatient care, informal admission to a treatment facility, appointment of a guardian or conservator, or release before commitment. Findings must also include a listing of less restrictive alterna-

tives considered and rejected by the court and the reasons for rejecting each alternative. Minn.Stat. § 253B.09, subd. 2.

The trial court found that "alternative methods of treatment, including voluntary treatment, individual and group therapy, have been attempted but Respondent has not cooperated with these less restrictive alternatives * * *." Moll suggests the trial court should have considered the alternative of voluntary inpatient care without medication, as he urged in his written statement submitted to the trial court at the September 16, 1983, hearing.

██ Moll's status as an incarcerated prisoner clearly limits the alternatives available to the trial court. This fact should have been specifically referred to in the trial court's findings but it is self-evident. In addition, the trial court's findings on the question of alternatives should have been expanded and clarified. The consideration of less restrictive alternatives is a matter of great significance. Although commitment may be a necessary procedure, it "cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). In fact, the Minnesota Supreme Court has recently noted that the 1982 Commitment Act "emphasizes treatment of mentally ill individuals in the least restrictive manner." *County of Hennepin v. Levine,* 345 N.W.2d 217, at 219, (Minn.1984).

██ Moll is particularly concerned that the trial court failed to address his specific request for inpatient treatment without medication. However, it is noteworthy that in Moll's written statement submitted to the trial court, he merely expressed a desire to use the MHU "without restraintive medicines"; he did not agree to cooperate with treatment as a voluntary inpatient at the MHU without medication. The trial court may well have concluded that Moll's suggestion was merely an unreasonable alternative. We will not re-

verse simply because the trial court could have gone into more detail in explaining its findings. *Peterson v. Johnston,* 254 N.W.2d 360 (Minn.1977). The totality of the record shows that reasonable alternatives were considered.

■ The trial court concluded that based on the record, medication was the most appropriate treatment for Moll. In its order, the court stated "[t]hat the intramuscular injection of psychiatric medications is specifically authorized, in the event that Respondent refuses such medication, inasmuch as the Court is convinced that Respondent's mental condition requires the administration of such medications, and that his welfare is best served by provision for this treatment upon the recommendation of the medical staff."

The trial court's order authorizing medication was apparently made in response to *Price v. Sheppard,* 307 Minn. 250, 239 N.W.2d 905 (1976). In *Price,* the Minnesota Supreme Court adopted a procedure in which the trial court determined the necessity and reasonableness of prescribed treatment when a patient refused to take treatment.

Underlying the *Price* opinion is an acknowledgment that the nonconsensual administration of anti-psychotic drugs may invade a person's interest in privacy, personal security, and personal dignity. *See also Rennie v. Klein,* 653 F.2d 836, 844 (3d Cir.1981), vacated in light of *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) in 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982). It also may invade a person's liberty interest, *Mills v. Rogers,* 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982), and one's First Amendment interest in being able to think and communicate freely. *Scott v. Plante,* 532 F.2d 939, 946 (3d Cir.1976), on appeal after remand, 641 F.2d 117 (3d Cir.1981), vacated in light of *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) in 458 U.S. 1101, 102 S.Ct. 3474, 73 L.Ed.2d 1362; *Davis v. Hubbard,* 506 F.Supp. 915, 933 (N.D.Ohio 1980).

In Minnesota, each state hospital has a treatment review board. Minn.Stat. § 253B.22 (1983). One of the items reviewed is a patient's refusal to accept medication. Department of Public Welfare, Policy Bulletin No. 26 (1974). Similarly, the MHU at the Oak Park Heights facility has a Mental Health Unit Review Board. Department of Corrections, Mental Health Unit Manual (Rev. Oct.1983). The trial court's authorization of medication for a patient in the judicial commitment proceeding precludes effective review by the Review Board. Moreover, in the Comments to Rule 8 of the Special Rules of Procedure Governing Proceedings Under the Minnesota Commitment Act of 1982, it states " * * * [i]t is not the intention of these Rules that the court include in its order a specification of the treatment to be administered." At the time it adjudged Moll mentally ill, the trial court should not have authorized or determined medication as a proper method of treatment. This part of the trial court's order is thus vacated.

### DECISION

The order committing Moll to the MHU for up to six months is affirmed. There is ample evidence to support the trial court's finding that Moll was mentally ill as defined in Minn.Stat. § 253B.02, subd. 13, and that no reasonable alternatives to commitment existed.

The trial court's order authorizing the injection of psychiatric medication is vacated.

Affirmed in part, vacated in part.