**In the Matter of Richard ADAMS.**

**No. CO–84–590.**

Court of Appeals of Minnesota.

July 31, 1984.

**118**

Gerald Chester, Minneapolis, for appellant.

Thomas Johnson, Hennepin County Atty., Douglas McClellan, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

Adams appeals from a February 28, 1984 order for final commitment which continued his commitment to Anoka State Hospital for 12 months. We affirm.

### FACTS

Adams was initially committed as mentally ill and dangerous in September 1983. On October 31, 1983, the commitment as mentally ill and dangerous was vacated and Adams was sent to Anoka State Hospital on an initial commitment as mentally ill. The court conducted a hearing to review the commitment on February 28, 1984. Reports were filed by the head of Anoka State Hospital and by an independent examiner, psychologist Doctor James Jacobson, appointed at Adams' request. Both concurred that Adams was mentally ill. Doctor Jacobson concluded that Adams had a major affective disorder, bipolar and manic with psychotic features. The treatment report diagnosed Adams as having a bipolar affective disorder, substance abuse in remission and substance abuse of alcohol, and recommended 12 months further hospitalization. At the hearing, Doctor Jacobson concurred with the recommendation for 12 months further hospitalization.

The court concluded that, due to the concurrence of reports that Adams remained mentally ill, his refusal to take psychotropic drugs, the lack of evidence that Adams could take care of himself if released, and the unavailability of any community based treatment program, "[t]he statutory criteria for continued commitment have been met." Commitment was continued for 12 months.

### ISSUE

Whether the trial court properly continued Adams' commitment for 12 months?

### ANALYSIS

Following an initial six month commitment pursuant to Minn.Stat. § 253B.09, subd. 5 (1982), a review hearing is held. Minn.Stat. § 253B.12 (1982 and Supp.1983). The head of the facility to which the patient was committed files a written report, Minn.Stat. § 253B.12, subd. 1 (Supp.1983), and the patient may request appointment of an independent examiner. Minn.Stat. § 253B.12, subd. 3 (1982). At Adams' request, Doctor James Jacobson was appointed.

The trial court may properly order continued commitment if it finds, by clear and convincing evidence, that the patient continues to be mentally ill, that involuntary commitment is necessary for the protection of the patient or others, and that there is no alternative to involuntary commitment. Minn.Stat. § 253B.12, subd. 4 (Supp.1983).

The definition of a mentally ill person, Minn.Stat. § 253B.02, subd. 13, applied at the initial commitment is modified somewhat for the review hearing.

"Mentally ill person" means any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which (a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and (b) poses a substantial likelihood of physical harm to himself or others as demonstrated by (i) a recent attempt or threat to physically harm himself or others, or (ii) a failure to provide necessary food, clothing, shelter or medi-

cal care for himself, as a result of the impairment. Minn.Stat. § 253B.02, subd. 13 (Supp.1983). At the review hearing, the likelihood of harm need not be shown by a recent attempt or threat of harm, or a recent failure to provide necessities, but is satisfied if the court finds the patient is likely to attempt to harm himself or others or to fail to provide necessities unless commitment continues. Minn.Stat. § 253B.12, subd. 4.

■ The evidence amply supports the court's conclusion that Adams remains mentally ill. Both the treatment report and the independent examiner concluded that Adams had a major bipolar affective disorder with chemical dependency problems. The court also adopted Doctor Jacobson's diagnosis that Adams' mental illness had psychotic features. Adams was also shown likely to harm himself and others and unlikely to provide adequate food, clothing, shelter or medical care for himself. Theresa Shin, a psychiatric social worker at Anoka State Hospital, who had first worked with Adams five years ago, testified that Adams would likely harm others, due to his impulsive, angry behavior. Doctor Jacobson also noted that Adams experienced hostile and angry outbursts and that he had no realistic plans to provide for himself.

The treatment report from Anoka State Hospital recommended continued commitment to insure that Adams would continue needed medications and would not again become violent, as when he had previously attempted suicide, threatened suicide and threatened to kill others. This evidence supports the conclusion that Adams remains mentally ill and that continued involuntary commitment is necessary to protect Adams and the community.

Finally, the court found that there was no alternative to involuntary commitment. While Adams suggested at the review hearing that he might live in his brother's apartment, Theresa Shin testified that there was "definitely" no alternative to commitment. She further testified that Adams "changes his mind" daily as to his future plans. Doctor Jacobson emphasized the importance of stabilizing Adams' medications in the hospital before a less restrictive alternative could be considered.

■ Appellant argues that the court failed to state the reasons for rejecting less restrictive alternatives and to specify conduct of Adams upon which the decision was based. Minn.Stat. § 253B.12, subd. 7. However, the order of the trial court found that Adams was not medically stabilized, that he did not acknowledge the need to take medications on a regular basis or to bring his behavior under control, and that there is no community based treatment program that is willing to accept him at the present time. For these reasons, the trial court concluded that "[t]he statutory criteria for continued commitment have been met." We agree.

In civil cases, "where the record is reasonably clear and the facts not seriously disputed, the judgment of the trial court can be upheld in the absence of trial court findings[.]" *Roberson v. Roberson*, 296 Minn. 476, 478, 206 N.W.2d 347, 348 (1973). Nonetheless, it appears that the intent of the drafters of Minn.Stat. § 253B.12, subd. 7 was for trial courts to make specific findings in cases of civil commitment. While we hold that the findings in this case are legally sufficient, we encourage specific findings on each of the statutory requisites for continued commitment and a clear recitation of the evidence supporting the court's conclusion. Careful attention should be paid to the language of the statute.

### DECISION

Because Adams was shown by clear and convincing evidence to be mentally ill, commitment is necessary to protect Adams and others, and there was no alternative available to commitment, the trial court properly continued the commitment for 12 months.

Affirmed.