In the Matter of Thomas F. SMITH.

No. C0–86–965.

Court of Appeals of Minnesota.

Aug. 26, 1986.

Kirk W. Reilly, McIntosh & Commers, Minneapolis, for appellant.

Thomas L. Johnson, Hennepin Co. Atty., Rick Osborne, Asst. Co. Atty., Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellant Thomas Smith was committed as a chemically dependent person in November 1985 and transferred to the Anoka-Metro Regional Treatment Center (AMRTC), formerly Anoka State Hospital. The medical director there then sought commitment of Smith as a mentally ill person. The examiner suspected Smith's erratic and violent behavior was caused by organic brain deterioration resulting from alcoholism, and the petition was dismissed. After a six month review hearing in May 1986, the trial court ordered continued commitment as a chemically dependent person until May 14, 1987. Smith seeks review and we affirm, but remand for further findings on duration of the continued commitment.

## FACTS

Thomas Smith is a 61–year–old man with a history of chronic chemical abuse. In the year prior to the November 1985 petition for his commitment, Smith was admitted to Hennepin County Alcohol Receiving Center ("detox") 25 times. At commitment, mental illness in addition to chemical dependency was suspected and diagnosed by the court-appointed examiner.

Smith agreed to placement at the Lakeside Treatment Center in November 1985, which transferred Smith to AMRTC one month later, being unable to deal with his violent behavior. Smith remained uncooperative and violent after the transfer. Involuntary administration of medications was authorized in early May 1986 and Smith showed some improvement by May 22, when the trial court reviewed his commitment.

Psychologist Glenn Werner, who observed Smith daily at AMRTC, testified Smith remains chemically dependent and should be treated in the current unit until his assaultive behavior abates enough to permit placement in a unit which can directly treat his chemical dependency. The goal of Werner's unit is to stabilize Smith's behavior, then transfer him to a unit for patients with both mental illness and chemical dependency problems, and eventually transfer him to Lakeside Treatment Center. Werner believed Smith would not voluntarily cooperate with treatment if commitment was not ordered, since he lacks insight into his mental illness and chemical dependency.

Smith requested a second examiner and licensed consulting psychologist James Jacobson agreed Smith remains chemically dependent and in need of treatment. Before treatment can begin, Jacobson testified Smith's behavior must be stabilized with medications.

No witness testified regarding the length of time necessary to stabilize and then treat Smith before discharge. At the close of the hearing, the trial court announced it found continued commitment was necessary, refused Smith's request to order the hospital to place him in the dual diagnosis unit, and announced its intention to continue commitment for an additional six months before a new petition would be required. The court's written order, issued one day later, included findings that Smith continues to be chemically dependent and commitment is required to protect Smith and others. The findings noted Smith's continued violent and aggressive behavior and his inability to participate in chemical dependency treatment until his mental condition stabilized. The court concluded that continued commitment at AMRTC was appropriate and continued Smith's commitment until May 14, 1987.

## ISSUES

1. Was the evidence sufficient to support continued commitment?

2. Did the trial court properly deny appellant's motion to dismiss chemical dependency proceedings because appellant was treated for mental illness?

3. Is appellant's challenge to the involuntary administration of medications properly raised on appeal?

4. Does the evidence support continuation of commitment until May 14, 1987?

## ANALYSIS

1. After an initial six month commitment, the treating facility reports to the trial court on its diagnosis, treatment, and proposals for the patient. Minn.Stat. § 253B.12, subd. 1 (1984). A report was filed by AMRTC. The patient may then request appointment of an independent examiner to file an additional report with the court, which was done. *Id.* subd. 3. After a hearing, the court may order continued commitment if it

> finds by clear and convincing evidence that (1) the person continues to be * * * chemically dependent; (2) involuntary commitment is necessary for the protection of the patient or others; and (3) there is no alternative to involuntary commitment.

*Id.* subd. 4.

■ The factual findings of the trial court will not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01. Although Smith concedes the trial court's finding that he continues to be chemically dependent is not clearly erroneous, he argues his polite behavior at the interview with Dr. Jacobson somehow demonstrates that further commitment is unnecessary. However, the testimony was uncontroverted that Smith's assaultive behavior resulted in injury to staff. Smith's own examiner testified stabilization of Smith's violent behavior was the immediate concern, even before treatment for chemical dependency. The court's finding that involuntary commitment remained necessary for the protection of Smith and others is clearly supported by the evidence and not erroneous.

■ Smith claims a less restrictive available alternative was placement in the Anoka unit designed to treat both mental illness and chemical dependency. The statute requires continued commitment if there is no alternative to "involuntary commitment." Both psychologists testified Smith is not yet ready for the dual diagnosis unit. *See In re Joelson,* 385 N.W.2d 810, 811 (Minn.1986)(affirming treatment of patient in program which does not directly address his disorder, with goal of helping patient progress sufficiently to allow admission into program which will directly address the disorder); *In re Adams,* 352 N.W.2d 117, 119 (Minn.Ct.App.1984) (no alternative to involuntary commitment when examiner emphasized importance of stabilizing patient's condition on medications before alternatives could be considered). Smith is unwilling to cooperate with voluntary treatment and has no insight into his problems. The trial court's continued commitment of Smith to AMRTC will permit transfer to the dual diagnosis unit when Smith is ready. The trial court did not err in finding the requisites for continued commitment had been met, since the evidence established there was no alternative to involuntary commitment.

2. Smith argued for dismissal of proceedings to continue his commitment as a *chemically dependent* person in light of past treatment for his *mental illness.* We note the commissioner was authorized to transfer Smith from Lakeside Treatment Center where he was initially committed in November 1985 to any state treatment facility "capable of providing proper care and treatment." Minn.Stat. § 253B.14. All patients have "the right to receive proper care and treatment, best adapted, according to contemporary professional standards, to rendering further custody, institutionalization, or other services unnecessary." Minn.Stat. § 253B.03, subd. 7. After Smith's commitment, treating personnel determined he required treatment for his violence and mental illness before chemical dependency treatment could be effective and properly sought his transfer to a facility which could provide that treatment.

By demanding placement in a unit which treats both chemical dependency and mental illness, Smith impliedly concedes the propriety of treating his mental illness. However, he apparently argues the treating facility is bound by the commitment "label" to treat only for that disorder. We reject this argument because (1) the statute requires the treating facility to work toward the goal of release from the institution, not just alleviation of a single problem, and (2) the conduct of treatment is largely for hospital personnel and the treatment review board to determine, and not for the committing court. *In re Pope*, 351 N.W.2d 682, 683 (Minn.Ct.App.1984) (citing *In re Moll*, 347 N.W.2d 67 (Minn.Ct.App. 1984)). Although treatment issues are generally more properly raised before the hospital's treatment review board, the trial court must make limited inquiry into the potential for meeting the patient's treatment needs at the facility where the patient is committed. *In re Cieminski*, 374 N.W.2d 289, 292 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 18, 1985). Smith agrees that AMRTC is capable of meeting his statutory right to treatment, but would inject the trial court into treatment decisions and limit treatment to chemical dependency alone, despite expert opinion that other treatment must come first.

It is clear Smith remains chemically dependent and requires further treatment. The trial court in this case properly denied Smith's motion to dismiss proceedings simply because the treating facility attempted to address Smith's mental illness in addition to his chemical dependency.

3. The hospital's treatment review board apparently authorized administration of psychotropic medications over Smith's objection in early May. On appeal, Smith argues for the first time that prior court authorization was required pursuant to *Price v. Sheppard*, 307 Minn. 250, 239 N.W.2d 905 (1976). We will not review issues raised for the first time on appeal.

One of the functions of the treatment review board is to review patient refusals to accept prescribed medications.

*In re Kennedy*, 350 N.W.2d 484, 485 (Minn. Ct.App.1984); *In re Moll*, 347 N.W.2d 67, 71 (Minn.Ct.App.1984). The supreme court has authorized hospitals to determine when "the use of mild tranquilizers or those therapies requiring the cooperation of the patient" is appropriate. *Price*, 307 Minn. at 263, 239 N.W.2d at 913. An adversary proceeding before a trial court is required prior to "the administration of electroshock treatments, one of the most intrusive forms of treatment." *Id.* at 260–62, 239 N.W.2d at 912–13; *see also In re Kinzer*, 375 N.W.2d 526 (Minn.Ct.App.1985).

A reviewing court must limit itself to a consideration of only those issues that the record shows were presented and considered by the trial court in deciding the matter before it.

*Thayer v. American Financial Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn.1982). Because Smith did not challenge the treatment review board's authorization of medications before the trial court, we have no record of the procedures followed, the drugs being administered, or the application of *Price v. Sheppard*. We therefore decline to consider this issue.

4. If, at the conclusion of a hearing held pursuant to section 253B.12, it is found that a person continues to be chemically dependent, the court shall order the continued commitment of the person for a period of time not to exceed one year.

Minn.Stat. § 253B.13, subd. 3. As the trial court stated at the close of the hearing, there was no testimony on the length of continued commitment required to treat Smith. The court announced its intention to continue commitment for six months, and require a new petition for any commitment beyond that time. However, the trial court's written order continues Smith's commitment for nearly one year, until May 14, 1987.

The order contains no findings on the length of further commitment required or explanation for the deviation from the court's announced intention to continue commitment for only six months. While

the subdivision relating to *chemically dependent* persons does not explicitly require a finding on the probable length of commitment necessary, as required for continued commitment of *mentally ill* persons, *cf.* Minn.Stat. § 253B.13, subds. 3 and 1, the pervasive statutory emphasis on utilizing the least restrictive alternative requires continued commitment for the shortest appropriate time. "[W]e encourage specific findings on each of the statutory requisites for continued commitment * * *." *In re Adams*, 352 N.W.2d 117, 119 (Minn.Ct.App. 1984).

The six month report from AMRTC stated "it is not possible to anticipate the discharge date" and petitioner elicited no testimony on this point. The petitioner seeking continued commitment has the burden of proving all elements and petitioners should not ignore the element of duration. Trial courts should not be forced to determine the length of continued commitment without evidentiary basis.

### DECISION

Continued commitment is affirmed. The duration of continued commitment is remanded to the trial court for further findings. At its discretion, the trial court may take further evidence on this point.

Affirmed and remanded.