**In re Jeanne MELCHER.**

**No. C2–87–170.**

Court of Appeals of Minnesota.

April 21, 1987.

John R. Solien, Haberkorn & Solien, Ltd., Aitkin, for appellant Jeanne Melcher.

John R. Leitner, Aitkin Co. Atty., Aitkin, for respondent Aitkin County Family Service Agency.

Considered and decided by POPOVICH, C.J., and LANSING and RANDALL, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Appellant was initially committed to the Brainerd Regional Human Services Center on July 7, 1986. Her commitment was continued on January 16, 1987, and she appeals from that order.

## FACTS

Jeanne Melcher was hospitalized on June 17, 1986, as a result of a suicide attempt by ingestion of an estimated 30 aspirin with beer. Melcher has a history of mental illness. When evaluated in connection with the initial commitment proceedings, Melcher stated she took the aspirin to counteract infection. She dressed in many layers of clothing while in the hospital, or refused to wear anything at all. She repeatedly expressed delusional ideas revolving around the Kennedy family, apparently related to her attendance at John F. Kennedy High School some 20 years earlier. Melcher's reasoning and speech were significantly disorganized and difficult to understand.

The trial court found Melcher to be a mentally ill person in need of commitment to the state hospital. The July 2 findings noted Melcher's bizarre behavior, sexually provocative conduct, suicide attempt, incoherent speech and delusions, inappropriate dress, and denial of the need for treatment.

The state hospital submitted a report in September, two months after Melcher's commitment. The report diagnosed Melcher as schizophrenic and gave examples of her delusional statements. Melcher continued to believe she had a special relationship with "the Joe Kennedys out east" and asserted they would send her money if she wrote. She claimed to be playing cards with three friends, with whom she talked and laughed, although she was alone at the time. She dressed in many layers of clothing, including wearing her pajamas, a pillow case for a skirt, a towel wrapped as a turban around her head, and sunglasses.

A further report was submitted by the hospital on December 23, 1986. Melcher continued to be delusional and denied any mental illness or need for treatment. She had twice left the hospital without permission and claimed the person who "kidnapped" her eventually brought her back. The hospital's report, signed by psychiatrist John Bonde, rejected alternatives to continued commitment, confirmed the diagnosis of schizophrenia, and detailed evidence of continuing delusions and "markedly peculiar behavior."

Melcher requested a second examiner, and licensed consulting psychologist Douglas Dahlquist was appointed on January 16, 1987. The transcript indicates Dahlquist filed a report "favorable" to continued commitment, but that report is not contained in the trial court file. A copy of what appears to be Dahlquist's January 1987 report is contained on the reverse of a

handwritten statement by Melcher which was read into the record at the hearing on the issue of continued commitment. The Dahlquist report was not offered into evidence, although the court, Melcher and counsel apparently had it before them.

The trial court heard testimony on January 12 on whether Melcher's commitment should be continued. Dr. Bonde, a psychiatrist at the Brainerd Regional Human Services Center, testified Melcher's mental condition had not changed appreciably since admission. She continued to be mentally ill, and Bonde recommended her commitment to the hospital be continued. Bonde believed Melcher would improve if she were treated with major tranquilizers for at least two months. He saw no alternative to continued hospitalization because Melcher would not voluntarily cooperate with treatment. Bonde testified hospitalization with close supervision was dictated by Melcher's suicide attempt. He testified Melcher would not be discharged quickly, but could only "guess" at a possible discharge date in March 1987. Bonde indicated the actual discharge date would be determined by Melcher's progress.

Melcher testified on her own behalf. She told the court she was not mentally ill and was no danger to herself. She denied the suicide attempt and said she wanted to build a life with her daughter. In the past, Melcher had claimed her daughter was in Washington with the President, or somewhere in the hospital, being kept from her. Melcher claimed she had written to "church organizations or the democrats or the Kennedys that I know, because I went to Kennedy High School." She gave as "the reason that I don't know where my daughter is because I was living on a hill in New York and some state troopers came and dragged me off and handcuffed me and shot me up."

Melcher's father testified Melcher could live at home if she were released. He told the court of one incident when he made chili for Melcher, who then turned off the refrigerator for one week and permitted the food to spoil, but continued to eat it.

The trial court issued its findings and conclusions requiring Melcher's continued commitment "for a period not to exceed 12 months" on January 16, and this appeal followed.

## ISSUES

1. Is the order for continued commitment supported by the evidence?

2. Did the trial court err in failing to determine the term of the continued commitment?

## ANALYSIS

### I

▉ The trial court may continue a patient's commitment if it finds, by clear and convincing evidence, (a) the person continues to be mentally ill, (b) involuntary commitment is necessary to protect the patient or others, and (c) there is no alternative to involuntary commitment. Minn. Stat. § 253B.12, subd. 4 (1986). To initially commit a person as mentally ill, the trial court must find a substantial psychiatric disorder manifested by grossly disturbed behavior and must further find the person poses a substantial likelihood of physical harm to self or others, as demonstrated by a recent attempt or threat of harm or the failure to obtain necessary food, clothing, shelter, safety or medical care. Minn.Stat. § 253B.02, subd. 13. When evaluating whether to continue commitment,

the court need not find that there has been a recent attempt or threat to physically harm self or others, or a recent failure to provide necessary personal food, clothing, shelter, or medical care. Instead, the court must find that the patient is likely to attempt to physically harm self or others, or to fail to provide necessary personal food, clothing, shelter or medical care unless involuntary commitment is continued.

Minn.Stat. § 253B.12, subd. 4.

Appellant claims Bonde did not unequivocally recommend continued commitment, there was insufficient evidence on dangerousness, and the court should not have

rejected the alternative of returning Melcher to her parents' home.

Bonde's written report stated that further treatment should "probably" continue to be provided in a state hospital pursuant to court order. At the hearing Bonde said he was uncomfortable testifying against his patient. He did, however, tell the court Melcher's condition has not improved, recommend the court continue her placement at the hospital so she could be further treated, and concluded he saw no alternative to continued hospitalization. Bonde also addressed the issue of dangerousness, stating it would not be safe to treat Melcher on an outpatient basis, considering her recent suicide attempt.

Bonde also stressed the importance of stabilizing Melcher on medications before any alternatives could be considered. No expert recommended that Melcher be released from the hospital. *See In re Adams,* 352 N.W.2d 117, 119 (Minn.Ct.App. 1984) (alternatives to involuntary commitment properly rejected when examiner emphasized importance of stabilizing patient's condition on medications before alternatives could be considered).

■ On the evidence before it, we cannot conclude the trial court clearly erred in finding continued commitment to the state hospital was required for Melcher's protection and in rejecting the option of returning Melcher to her parents' home.

## II

■ The trial court ordered Melcher's commitment continued "for a period not to exceed 12 months." If the trial court concludes

> the criteria for continued commitment have been satisfied, the court *shall* determine the probable length of commitment necessary. No period of commitment shall exceed this length of time or 12 months, whichever is less.

Minn.Stat. § 253B.13, subd. 1 (emphasis added).

The evidence before the trial court indicated that Melcher might be discharged by March 6, although Bonde indicated Melcher

could be ready one month earlier or two months later. When the trial court fails to make any finding on the probable length of continued commitment, we must remand. *State v. Casanova,* 359 N.W.2d 696, 698 (Minn.Ct.App.1984).

## DECISION

The order for continued commitment is supported by the evidence and is affirmed. The matter is remanded to the trial court to determine the probable length of continued commitment, and the court may take further evidence on this issue, if necessary.

Affirmed and remanded.