Monique R. HAWKINS on behalf of herself and all other persons similarly situated, Appellant,

v.

THORP CREDIT AND THRIFT COMPANY, a/k/a Thorp Credit and Finance Company, American Bankers Life Assurance Company of Florida, Respondents.

No. C0-88-2123.

Supreme Court of Minnesota.

June 2, 1989.

Rehearing Denied June 30, 1989.

Reinhardt and Anderson, Mark Reinhardt, Susan Bedor, and Richard Nadler & Associates, Richard Nadler, Michael Hoverson, St. Paul, for appellant.

Lindquist & Vennum, Richard Ihrig, Kurtis A. Greenley, William P. Hoye, Mackall, Crounse & Moore, Clay Moore, Frank Dvorak, Minneapolis, for Thorpe.

Faegre & Benson, Arthur L. Daten, Minneapolis, for American Bankers.

Seymour J. Mansfield & Associates, Seymour J. Mansfield, Richard Fuller, Minneapolis, amici curiae.

Legal Aid Society of MN/Mid-MN Legal Assistance, Galen Robinson, Minneapolis, amici curiae.

Heard, considered and decided by the court en banc.

YETKA, Justice.

Appellant, Monique R. Hawkins, appeals from a judgment entered in Hennepin County District Court in favor of respondents, Thorp Credit and Thrift Company and American Bankers Life Assurance Company of Florida, on the question of whether the insurance sold and written by respondents was a per se violation of Minnesota law. After entering final judgment, the trial court apparently intended to certify the above question as important and doubtful pursuant to Minn.R.Civ.App.P. 103.03(h). This case comes before this court from respondents' petition for accelerated review. Because this is an appeal from an entry of judgment rather than a certification, this court will treat the appeal as one made under Minn.R.Civ.App.P. 103.-03(a).

On appeal, appellant and amici curiae argue that the trial court erred when it held that respondents' sale of insurance

and consumer club membership to their loan customers was not a per se violation of either Minn.Stat. § 56.155, subd. 1 or 56.131, subd. 2. We reverse the trial court and remand for trial.

This suit arises from a consumer loan transaction between appellant, a resident of the State of Minnesota, and respondent, Thorp Credit and Thrift Company (hereinafter "Thorp"), a Minnesota corporation operating as an industrial loan and thrift company licensed and regulated under chapters 53 and 56 of the Minnesota statutes. Thorp is a wholly owned subsidiary of ITT Financial Corporation, an affiliate of ITT Corporation.

Prior to August 30, 1980, ITT Lyndon Insurance Company and ITT Consumer Financial Corporation, both wholly owned subsidiaries of ITT Financial Corporation, entered into an agreement with respondent, American Bankers Life Assurance Company of Florida (hereinafter "American Bankers"), to sell single premium level term life insurance, also known as SPT–5, through the consumer credit offices of Thorp. Under the terms of the agreement, Thorp would sell American Bankers' SPT–5 life insurance to its customers and these policies would then be reinsured through Lyndon Insurance Company.

The SPT–5 insurance sold by the consumer credit offices of Thorp differs from the credit life insurance it sells in that the beneficiary is selected by the borrower and need not be the creditor. Also, unlike Thorp's credit insurance, the term of the SPT–5 insurance is not related to the term of the loan; it continues for 5 years regardless of whether the loan is repaid.

In addition to the SPT–5 insurance, Thorp also sold memberships to the ITT Consumer Thrift Club (hereinafter "CTC"), a discount buying club. Like the SPT–5 insurance, the CTC memberships were often sold contemporaneously with a consumer loan.

Thorp was very successful in selling both the SPT–5 insurance and the CTC memberships to its loan customers. Between 1981–1986, Thorp sold over 65,000 SPT–5's to its loan customers. Between 1983 and mid–1986, Thorp loan customers purchased more than 37,000 CTC memberships.

Sometime in early 1984, Monique Hawkins contacted Thorp to obtain a consumer loan. Hawkins alleges that she was seeking only a loan and not interested in life insurance or a CTC membership. On March 9, 1984, Hawkins entered into an agreement to borrow $1,044.33 from Thorp. When she went to sign for the loan, she claims that a premium of $178 for SPT–5 life insurance had been calculated into the loan payments without her approval. In addition, she found that contracts for both the SPT–5 and the CTC membership were hidden among the loan documents she was to sign. The same person who handled Hawkins' loan transaction also told her about the SPT–5 and the CTC membership and eventually sold her these products.

On March 8, 1985, Hawkins brought the present action against Thorp and American Bankers, alleging that standard deceptive sales techniques utilized by Thorp's employees violated several Minnesota statutes and caused Hawkins and other persons to purchase SPT–5 insurance and CTC memberships that they did not need or want.

Sometime before June 11, 1985, the Minnesota State Attorney General's Office began an investigation into Thorp's insurance selling practices. Following this investigation, the Attorney General claimed that Thorp's employees had engaged in "insurance packing." Specifically, it was alleged that Thorp employees had sold SPT–5 insurance and CTC memberships by including them in loan transactions without the express consent or awareness of the customer, suggested that refusal to buy the products would delay the loan and failed to disclose orally that the purchase of these products was optional. On June 11, 1985, Thorp and the Attorney General's Office entered into an Assurance and Order under which Thorp agreed to offer pro rata refunds to its loan customers who had purchased SPT–5 life insurance and to implement safeguards to prevent customer misunderstanding. While Thorp agreed to abide by the terms of the Assurance and

Order, it, at no time, admitted any of the Attorney General's allegations.

Several other parties in addition to Hawkins filed similar actions against respondents.[1] On May 29 and June 5, 1987, hearings were held in Hennepin County District Court on motions for intervention, consolidation and class action certification. At these hearings, counsel for Thorp proposed that a ruling on the intervention and class certification motions be held in abeyance until cross-motions for summary judgment on the purely legal issues could be heard by the court. Thorp's counsel further suggested that, following a determination of these issues by the court, appeal would then be made to the Minnesota Supreme Court under Minn.R.Civ.App.P. 103.03(h) and 118. The trial court adopted Thorp's suggestion in the interests of expediting a resolution of the litigation.

Following the parties' cross-motions for summary judgment, the trial court granted respondents' motion for summary judgment, holding that, absent evidence of "insurance packing," the sale of SPT–5 insurance and CTC memberships was not a per se violation of Minnesota law. The trial court, finding no reason for delay, entered judgment for respondents and certified, pursuant to Minn.R.Civ.App.P. 103.03(h), the question of whether it was a per se violation of law to sell level term life insurance with a beneficiary who is not the lender and membership in a consumer thrift club to Monique Hawkins.

Before proceeding to the issues of the case as presented by the parties, we point out several problems with the certification order.

■ This court has required that, when a trial court certifies a question pursuant to Minn.R.Civ.App.P. 103.03(h), it must specify the precise legal question certified and make specific findings of fact. *Duxor Inv. Aktiengesell-schaft v. Investment Rarities, Inc.*, 413 N.W.2d 502, 504 (Minn.1987); *In re Kolodrubetz*, 343 N.W.2d 650, 652 (Minn.1984). Failure to do either may re-

sult in dismissal of the appeal. *Id.* Here, two problems exist with the certification order. First, the question as certified asks if the sale of the SPT–5 insurance and the CTC membership is a violation of Minnesota law, but does not specify which laws should be considered.

Second, and most important, the trial court failed to include any factual findings in its certification order, nor was there a factual stipulation between the parties. Perhaps, in a strict sense, factual findings are unnecessary when the trial court confines the parties' summary judgment motions to legal issues. Detailed findings are desirable, however, especially when, as here, the appeal really is not actually a certified question, but, rather, an appeal from judgment. The parties conceded this at oral argument; thus, we shall consider the case on that basis, namely, an appeal from judgment.

At oral argument, the parties acknowledged that the only issues before this court concern the entry of judgment by the trial court and the propriety of the SPT–5 and CTC membership under Minn.Stat. §§ 56.-155, subd. 1 (1988), 56.131, subd. 2 (1988). Because we find that the lack of factual findings prevents us from addressing section 56.131, subdivision 2, the only issue presented by this appeal is: Was the sale of SPT–5 life insurance to Thorp's loan customers a per se violation of Minn.Stat. § 56.155, subd. 1 (1988)?

Minn.Stat. § 56.155, subd. 1 (1988) provides in relevant part:

> No licensee shall, directly or indirectly, sell or offer for sale any insurance in connection with any loan made under this chapter except as and to the extent authorized by this section. The sale of credit life and credit accident and health insurance is subject to the provisions of chapter 62B, except that the term of the insurance may exceed 60 months if the term of the loan exceeds 60 months. Life, accident, and health insurance, or any of them, may be written upon or in connection with any loan but must not be

---

**1.** On appeal, the interests of these parties are   represented by amici curiae.

required as additional security for the indebtedness.

The trial court held that the SPT–5 sold to Thorp's customers did not violate section 56.155, subdivision 1 because it was not credit life insurance and that section applies only to credit life insurance.

On appeal, Hawkins contends that the SPT–5 is credit life insurance under Minnesota law while amici curiae argues that section 56.155, subdivision 1 applies even if the SPT–5 is not credit life insurance. If this court adopts either argument, Thorp's sale of SPT–5's in Minnesota is illegal because it does not meet the requirements of section 56.155, subdivision 1: the SPT–5 did not contain the required bold print disclosure statement; the SPT–5 was level term insurance and did not decrease in value, thereby violating Minn.Stat. § 62B.04, subd. 1 (1988); and, in violation of Minn. Stat. §§ 62B.05 and 62B.08 (1988), the SPT–5 contained no provision for cancellation and refund of premiums if the loan was prepaid before its scheduled maturity.

The trial court found that the SPT–5 did not fall within the "normally understood" definition of credit life insurance because the creditor was not the beneficiary of the policy and, therefore, it could not be credit life insurance.

Respondents cite to several cases which support the trial court's conclusion, the most persuasive of which is *Penn Security Life Ins. v. Rising,* 62 Cal.App.3d 302, 133 Cal.Rptr. 59 (1976).[2] In *Penn Security,* the California Court of Appeals stated that "credit life insurance" was "insurance on the life of a debtor *for the security of his creditor* pursuant to or in connection with a loan or other credit transaction." 62 Cal.App.3d at 304, 133 Cal.Rptr. at 60 (emphasis added). The *Penn Security* court based its definition of credit life insurance on California's statutory definition of the term. *See* Calif.Ins.Code 779.2, subd. 1 (Supp.1988). California's statute is virtual-

ly identical to Minn.Stat. § 62B.02, subd. 2 (1988) and both are based on the Credit Life Insurance and Credit Accident and Health Insurance Model Act promulgated by the National Association of Insurance Commissioners. *See* Hubbard, *Consumer Credit Life and Disability Insurance* 307 (1973); Minn.Stat. § 645.22 (1988) ("Laws uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them.").

▮ Minn.Stat. § 62B.02, subd. 2 (1988) defines credit life insurance as "insurance on the life of a debtor pursuant to or in connection with a specific loan or other credit transaction." *Id.* Hawkins argues that the plain language of section 62B.02 does not require creditor indemnity and states only that insurance be "in connection with" a loan for it to be credit insurance.

We disagree with Hawkins' interpretation of the statute. The insurance sold here was not credit life insurance. While the definition of credit life insurance was not at issue in any of the cases cited by respondents, various authorities are persuasive.

Several sections of chapter 62B make it clear that the legislature intended credit life insurance to be insurance which is sold on the life or health of the debtor to retire the debt in case of death, accident or illness. For example, Minn.Stat. § 62B.02, subd. 3 (1988) defines "credit accident and health insurance" as "insurance on a debtor to provide indemnity for payments becoming due * * *." *Id.* Section 62B.04, subdivision 1 provides that the initial amount of credit shall not exceed the total amount repayable under the contract of indebtedness.

The definition of credit life insurance by other jurisdictions and authorities, along with the intent of our legislature, convinces us that credit life insurance is insurance

---

2. Other authority cited in respondent's brief provides further support for the trial court's conclusion that credit life insurance normally provides for creditor indemnity. *See* Consumer Credit Guide (CCH) ¶ 3224 comment 4(d)–6 (1988) (insurance is not credit life, accident, health, or loss-of-income insurance if the creditor or the credit account of the consumer is not the beneficiary); 43 Am.Jur.2d *Insurance* § 517 (1982) (credit life insurance inures to the benefit of the creditor).

that provides for the indemnity of a creditor. Therefore, if Thorp is to be proscribed from selling the SPT–5 insurance, the prohibition must be found elsewhere.

■ We agree with amici that such a prohibition is found within Minn.Stat. § 56.155, subd. 1 (1988), which we again set out as follows:

> No licensee shall, directly or indirectly, sell or offer for sale *any* insurance in connection with any loan made under this chapter except as and to the extent authorized by this section. The sale of credit life and credit accident and health insurance is subject to the provisions of chapter 62B, except that the term of the insurance may exceed 60 months if the term of the loan exceeds 60 months. Life, accident, and health insurance, or any of them, may be written upon or in connection with any loan but must not be required as additional security for the indebtedness. If the debtor chooses to procure credit life insurance or credit accident and health insurance as security for the indebtedness, the debtor shall have the option of furnishing this security through existing policies of insurance that the debtor owns or controls, or of furnishing the coverage through any insurer authorized to transact business in this state.

*Id.* (emphasis added).

It is clear that the opening sentence of the statute forbids the sale of all insurance except as authorized by this section. The second sentence then authorizes the sale of various types of credit insurance and indicates that they are to be governed by chapter 62B. Respondents would have us believe that the third sentence permits the sale of insurance other than credit life insurance without having to meet the requirements of section 56.155. At first glance, that would appear to be a valid argument; however, a reference to the history of the statute compels us to the conclusion urged by amici; namely, that the first sentence bars the sale of all insurance except as permitted by the remainder of the statute. These sentences authorize the

sale of credit insurance only and require that their sale be governed by chapter 62B.

Prior to 1961, a specific ban on the sale of insurance was unnecessary because a statute prohibited lenders from conducting any business other than loan-making. The statute provided:

> No licensee shall conduct the business of making loans under this chapter within any office, room, or place of business in which any other business is solicited or engaged in, or in association or conjunction therewith, except as may be authorized, in writing, by the commissioner * * *.

Minn.Stat. § 56.12 (1961). While that section may have applied specifically to older, smaller loan companies, chapter 56 has now been codified to apply to all regulated loans.

In 1963, the following amendment was made in chapter 56 to allow for the sale of credit insurance:

> No licensee shall, directly or indirectly, sell or offer for sale *any insurance* in connection with any loan made under this chapter except as and to the extent authorized by this section. Life, accident, and health insurance, or any of them, may be written upon or in connection with any loan *for a term not extending beyond the final maturity date of the loan contract but only upon one obligor on any one loan contract. The amount of life insurance shall at no time exceed the unpaid balance of principal and charges combined which are scheduled to be outstanding under the terms of the loan contract or the actual amount unpaid on the loan contract, whichever is greater * * *.*

Act of March 22, 1963, ch. 117, 1963 Minn. Laws 175 (emphasis added) (codified at Minn.Stat. § 56.15, subd. 2 (1965)).

It is clear that this statute intended the sale of insurance only on the balance of the debt with the creditor's obligor. This section was later amended to read:

> No licensee shall, directly or indirectly, sell or offer for sale *any insurance* in connection with any loan made under this chapter except as and to the extent au-

thorized by this section. Life, accident, and health insurance, or any of them, may be written upon or in connection with any loan *in a manner consistent with chapter 62B and rules promulgated thereunder.* The licensee shall disclose whether or not the benefits shall commence as of the first day of disability and shall further disclose the number of days that an insured obligor must be disabled, as defined in the policy, before benefits, whether retroactive or nonretroactive, shall commence. In case there are multiple obligors under a transaction subject to this chapter no policy or certificate of insurance providing credit accident and health benefits shall be procured by or through a licensee upon more than one of the obligors.

Minn.Stat. § 56.15, subd. 2 (1978) (emphasis added). As can be seen, this section still made it clear that no insurance could be sold except that regulated by chapter 62B.

In 1981, the statute took its present form. Act of May 27, 1981, ch. 258, § 14, 1981 Minn.Laws 1101. The prohibition against the sale of any insurance and the authorization to sell credit life insurance remained. The legislature then split the second sentence of the previous 1977 statute to authorize the sale of credit life insurance for a term greater than 60 months.

The history of this statute demonstrates that the only insurance in connection with a loan that the legislature intended to authorize was credit life, accident or disability insurance which would serve as security for the balance of the debt. As a result, Thorp is prohibited by law from selling SPT–5 insurance.

The trial court also found that it was not in violation of the law for Thorp to sell membership in a consumer thrift club to the plaintiff. We reverse the trial court on this issue as well and remand for specific findings of practices used by Thorp in the sale of such memberships in order to determine whether these practices in any way violated the law.

Likewise, the other issues discussed by the parties in their briefs are not before this court and need not be addressed be-cause the parties agreed at oral argument that the sole issue for determination by this court involves the legality of the entry of judgment by the trial court and the validity of SPT–5 insurance policies under Minn.Stat. §§ 56.155, subd. 1, 56.131, subd. 2.

The trial court is reversed, and the case is remanded for trial on the issues remaining in dispute.