In Re Gabriel Khalig EL–RASHAD,
Alleged Mentally Ill.

No. C0–87–1270.

Court of Appeals of Minnesota.

Sept. 8, 1987.

Oliver W. Oddan, Stillwater, for appellant El-Rashad.

Robert Kelly, Washington Co. Atty., Douglas H. Johnson, Asst. Co. Atty., Stillwater, for respondent.

Considered and decided by POPOVICH, C.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

El-Rashad appeals from a June 11 order committing him to the mental health unit at Oak Park Heights, where he is an inmate, as a mentally ill person. We affirm.

## FACTS

Appellant Gabriel El-Rashad has been an inmate at Oak Park Heights Correctional Facility since January 30, 1985. He has been involved in several incidents of violence, has repeatedly threatened the safety of others and attempted suicide. El-Rashad has voluntarily admitted himself to the

mental health unit at Oak Park Heights on several occasions and has also "signed himself out" of the unit.

A petition for commitment as a mentally ill person was filed by Lowell Parsons, a licensed consulting psychologist who serves as assistant director of the Oak Park Heights Mental Health Unit (hereafter MHU). Examiners were appointed and a hearing was held on the petition for commitment on May 29 and June 1, 1987. Amy Medina, a behavior therapist at Oak Park Heights since December 1983, related numerous threats made by the patient to her safety. She testified El-Rashad had torn his mattress and sheets to create nooses to hang himself.

Dr. John Buck, a senior clinical psychologist, appointed the examiner by the court, diagnosed El-Rashad as suffering from atypical depression, characterized by an extremely impulsive personality style. He testified the depression had been present throughout much of the prior two years and had resulted in sleep and appetite disturbances and numerous suicide gestures. Since Dr. Buck was unable to clearly determine whether El-Rashad suffered from ongoing depression or had elements of an adjustment disorder resulting from his environment, he characterized El-Rashad's illness as atypical depression.

Dr. Buck specifically testified El-Rashad suffered from a substantial psychiatric disorder of mood which grossly impairs his behavior, manifested by grossly disturbed behavior and suicide attempts. Although El-Rashad did not suffer from a thought disorder and did not appear to be out of contact with reality, his mood and behavior problems are substantial. Buck testified El-Rashad is mentally ill.

Lowell Parsons, who had petitioned for El-Rashad's commitment, has been a clinical psychologist since 1967. He testified concerning El-Rashad's repeated suicide attempts and violence towards other inmates. He also diagnosed El-Rashad as having a major problem with depression and specifically testified El-Rashad has a substantial psychiatric disorder of mood which grossly impairs his judgment and behavior. The disorder is manifested by instances of grossly disturbed behavior and there is a substantial likelihood that El-Rashad will harm himself or others, based on his past attempts at harm.

Dr. Parsons was questioned why his prior submission to the court had indicated El-Rashad is not mentally ill. He indicated what he meant was El-Rashad does not have schizophrenia or another psychotic disorder characterized by a loss of touch with reality. However, Parsons stressed El-Rashad does have a major problem with depression, which is a substantial psychiatric disorder, and his expressions of suicidal intent are serious.

Licensed consulting psychologist John Austin was appointed at El-Rashad's request. Dr. Austin did not agree with the diagnosis of severe depression, although he saw some evidence of depressed behavior. Austin characterized El-Rashad's problem as an adjustment reaction to the specific stress of the institution. He felt that El-Rashad's depression had not reached the level of a prominent mood disturbance or major affective disorder. Austin was unable to testify whether El-Rashad had exhibited similar behavior before his admission to Oak Park Heights, but concluded El-Rashad essentially suffered from an antisocial personality disorder.

Dr. Austin's report, submitted to the court prior to the hearing, suggested appellant be transferred to a correction facility at St. Cloud. If El-Rashad's self-injurious behavior did not cease, then Austin conceded that commitment may be an appropriate alternative. Austin stressed it was important to act to prevent El-Rashad from committing suicide.

Appellant testified on his own behalf, confirming threats made at others and numerous suicide attempts. He believed he had been provoked to threaten others, and denied he was mentally ill. By order on June 9 which included detailed findings of fact, the trial court found there was clear and convincing evidence that El-Rashad was mentally ill and there was no suitable alternative to commitment. The trial court recited the substance of the expert testimo-

ny and itemized 13 separate suicide gestures or attempts made by El-Rashad between July 2, 1985 and April 28, 1987. The court found El-Rashad had a substantial psychiatric disorder of mood diagnosed as atypical depression and also suffered from a personality disorder. The court found the substantial psychiatric disorder of mood grossly impaired El-Rashad's behavior, and was manifested by instances of grossly disturbed behavior, including his suicide gestures and threats. The court found there was a substantial likelihood that El-Rashad would harm himself and rejected all alternatives to judicial commitment.

El-Rashad appeals, arguing (1) the evidence was insufficient to establish he is a mentally ill person, as the term is defined by statute, (2) the trial court erred in rejecting less restrictive alternative dispositions, and (3) the MHU at Oak Park Heights is an inappropriate placement.

### ISSUES

1. Is the trial court's finding that El-Rashad is a mentally ill person clearly erroneous?

2. Did the trial court err in rejecting less restrictive alternative dispositions?

3. Did the trial court err in its choice of treatment facility?

### ANALYSIS

■ 1. A trial court may order commitment of an individual as a mentally ill person if it finds (a) the individual has a substantial psychiatric disorder, (b) the disorder is manifested by grossly disturbed behavior or faulty perceptions, (c) the individual poses a substantial likelihood of physical harm to himself or others as demonstrated by a recent attempt to harm, and (d) there is no suitable less restrictive alternative disposition. Minn.Stat. §§ 253B.02, subd. 13, 253B.09, subd. 1 (1986). We may not set aside the findings of the trial court unless they are clearly erroneous. Minn.R. Civ.P. 52.01.

■ Appellant argues he suffers from a character disorder, and is not mentally ill

as defined by statute. An individual who suffers from an antisocial personality disorder, but not a major mental illness, may not be a "mentally ill person" as that term is defined by statute. *See Drewes v. Levine,* 366 N.W.2d 719, 721 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. July 11, 1985).

However, the trial court specifically found El-Rashad does suffer from a substantial psychiatric disorder, which is one element of the statutory definition. The definition requires clear and convincing evidence of "a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand." Minn. Stat. § 253B.02, subd. 13. Psychologists Buck and Parsons both testified that El-Rashad suffered from a substantial psychiatric disorder of mood and the disorder grossly impaired his behavior.

The statute also requires that the patient's substantial psychiatric disorder be "manifested by instances of grossly disturbed behavior or faulty perceptions." *Id.* There was ample testimony before the trial court concerning El-Rashad's grossly disturbed behavior and the repeated violence and suicide attempts were a result of his depression. We cannot agree the trial court erred in finding appellant is a mentally ill person.

The trial court also found El-Rashad's personality disorder "together with his lack of ability to control his actions as evidenced by his repeated suicide gestures or attempts, is a major mental illness." The trial court relied upon *Johnson v. Noot,* 323 N.W.2d 724 (Minn.1982), when concluding persons with antisocial personality disorders may be mentally ill as the term is defined by statute. In *Johnson,* the supreme court construed the requirements for discharge of a patient committed as mentally ill and dangerous, a situation which is not present here. The supreme court also applied a statute which has since been repealed, which required a showing of a "psychiatric or other disorder which substantially impairs * * * mental health."

Minn.Stat. § 253A.02, subd. 3 (1980) (repealed 1982). Although the court concluded "that a character disorder substantially impairs mental health and therefore constitutes mental illness only when the disorder takes away the person's ability to control his conduct," *Johnson*, 323 N.W.2d at 727, that interpretation has not yet been extended to the definition adopted in 1982. *See* Minn.Stat. § 253B.02, subd. 13 (1986). Other portions of the analysis in *Johnson* have been explicitly overruled. *See Enebak v. Noot*, 353 N.W.2d 544 (Minn.1984).

The trial court in this matter explicitly found that El-Rashad suffered from a substantial psychiatric disorder and was mentally ill as defined by the statute. The findings referring to El-Rashad's possible personality disorder are extraneous to our conclusion that the trial court's finding that El-Rashad is a mentally ill person is not clearly erroneous.

2. Even after a trial court determines a proposed patient is mentally ill, it must carefully consider "reasonable alternative dispositions, including but not limited to, dismissal of [the] petition, voluntary outpatient care, informal admission to a treatment facility, appointment of a guardian or conservator, or release before commitment." Minn.Stat. § 253B.09, subd. 1. As we have previously recognized, the status of a proposed patient "as an incarcerated prisoner clearly limits the alternatives available to the trial court." *In re Moll*, 347 N.W.2d 67, 70 (Minn.Ct.App.1984).

█ The trial court found dismissal of the petition was not a suitable alternative because a return to the segregation unit at Oak Park Heights would be more stressful to El-Rashad and only increase his problems. The trial court rejected voluntary outpatient care as an alternative because it would not ensure El-Rashad would not commit suicide. The order specifically found informal admission to a treatment facility and release before commitment to another facility or individual were unsuitable as a result of El-Rashad's status as an incarcerated prisoner. Finally, the appointment of a guardian or conservator was rejected as an unsuitable alternative because the trial court found it would not provide El-Rashad with the treatment he required.

Appellant erroneously argues commitment may be ordered only if there is no alternative. The trial court must determine whether there is any *suitable* alternative to commitment. Alternatives were clearly considered by the trial court and rejected as unsuitable.

3. El-Rashad argues the MHU at Oak Park Heights cannot effectively treat him and placement there is inappropriate. The trial court is obligated to "commit the patient to the least restrictive treatment facility which can meet the patient's treatment needs." Minn.Stat. § 253B.09, subd. 1. Even appellant's expert, psychologist John Austin, testified the primary treatment for appellant is to provide structure and control. As a committed person, appellant has the right to "proper care and treatment, best adapted, according to contemporary professional standards, to rendering further custody, institutionalization, or other services unnecessary." Minn.Stat. § 253B.03, subd. 7.

█ In essence, appellant argues the MHU will be unable to treat him. However, a patient may not assert a right to treatment until actually deprived of proper treatment. *Bailey v. Noot*, 324 N.W.2d 164 (Minn.1982); *see also In re Pope*, 351 N.W.2d 682, 684 (Minn.Ct.App.1984). The personnel from the MHU who testified at the commitment hearing have expressed their willingness to treat El-Rashad. He is entitled to proper treatment. We will not assume, in the absence of specific evidence, the right will be abused.

### DECISION

The order committing El-Rashad as a mentally ill person to the mental health unit at Oak Park Heights was proper.

Affirmed.